UNITED STATES *v.* ARIS GLOVES, INC. (No. 4446)[1]

[1] C. A. D. 268.

170

United States Court of Customs and Patent Appeals, February 7, 1944

*Paul P. Rao*, Assistant Attorney General (*Richard F. Weeks*, special attorney, of counsel) for the United States.

*Mary Rehan* for appellee.

[Oral argument December 8, 1943, by Mr. Weeks and Miss Rehan]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

This is an appeal by the Government from the judgment of the United States Customs Court (First Division) which sustained the protest of the importer of certain gloves imported from France. It involves the question of the applicability of the following provisions of, or relating to, the Tariff Act of 1930 (pertinent portions italicized). Paragraph 1532 (a) of said act reads as follows:

PAR. 1532. (a) Gloves made wholly or in chief value of leather, whether wholly or partly manufactured, shall be dutiable at the following rates, the lengths stated in each case being the extreme length (including the unfolded length of cuffs or other appendages) when stretched to their fullest extent namely: Men's gloves not over twelve inches in length, $6 per dozen pairs; *women's and children's gloves not over twelve inches in length, $5.50 per dozen pairs;* for each inch or fraction thereof in excess of twelve inches, 50 cents per dozen pairs: *Provided,* That, in addition thereto, on all the foregoing there shall be paid each of the following cumulative duties: *When machine seamed, otherwise than overseamed, $1 per dozen pairs; when seamed by hand, $5 per dozen pairs;* when lined with cotton, wool, silk, or other fabrics, $3.50 per dozen pairs; when trimmed with fur,

$4 per dozen pairs; when lined with leather or fur, $5 per dozen pairs: *Provided further*, That all the foregoing shall be dutiable at not less than 50 per centum ad valorem: * * *.

Said paragraph 1532 (a) was the subject matter of a trade agreement between the United States and France, T. D. 48316, 69 Treas. Dec. 853, 866, which became effective in 1936. The pertinent provisions of said trade agreement read as follows:

| Tariff Act of 1930, paragraph | Description of articles | Rate of duty |
|---|---|---|
| 1532 (a) | Women's and children's gloves, wholly or in chief value of leather, whether wholly or partly manufactured, *when seamed by hand*, but not lined, and not trimmed with fur, not over 12 inches in length. | *$4 per doz. prs. plus $3.50 additional per doz. prs.* |
| | and for each inch or fraction thereof in excess of 12 inches. | 25¢ per doz. prs. |
| | *Provided*, That all the foregoing shall be dutiable at not less than. | 35% ad val. |

The pertinent portion of a trade agreement between the United States and Czechoslovakia, T. D. 49458, 73 Treas. Dec. 454, 465, which became effective in 1938, reads:

| Tariff Act of 1930, paragraph | Description of articles | Rate of duty |
|---|---|---|
| 1532 (a) | Women's and children's gloves, wholly or in chief value of leather, whether wholly or partly manufactured, *when machine seamed,* but not lined, and not trimmed with fur, and not over twelve inches in length: | |
| | Overseamed | $5 per doz. prs. |
| | *Other than overseamed* | $5 per doz. prs. plus $1 additional per doz. prs. |
| | and for each inch or fraction thereof in excess of twelve inches. | 25¢ per doz. prs. |
| | *Provided*, That all the foregoing shall be dutiable at not less than | 50% ad val. |

The merchandise involved is represented by two exhibits, exhibit 1 and exhibit 2. Exhibit 1 is a suede leather glove, gauntlet in type. The fingers are seamed by machine, but the side seams, that is, extending from the point of the index and little fingers to the wrist, are hand-stitched and not machine-stitched. This hand-stitching is continued across the top of the glove. Exhibit 2 consists of a pair of leather gloves, also gauntlet in type, which are first entirely sewn by machine, after which additional hand-stitching is placed over the side seams on the little finger sides of the gloves and across the top (apparently for ornamentation).

The portion of the report of the collector with which we are here concerned reads as follows:

The appraiser's description of the merchandise, made in accordance with section 500 (a) (4), Tariff Act of 1930, and articles 772 (c) and 776 (g), Customs Regulations of 1937, was accepted and adopted by this office in liquidation, and

the merchandise was accordingly classified as hand-seamed leather gloves not over 12″ in length at $7.50 under paragraph 1532 and T. D. 48316 [the French Trade Agreement] of the Tariff Act of 1930.

It will thus be seen that the collector applied a duty of $7.50 to the gloves by reason of the fact that hand-seamed gloves, under the French Trade Agreement were dutiable at $4 plus $3.50 per dozen pairs, a lower rate of duty for gloves seamed by hand than that prescribed by said paragraph 1532 (a) of the act for the same type of merchandise.

In appellee's protest the only claim made (except general claims with which we are not here concerned) is in the following language:

We claim the merchandise is properly dutiable at $5 per doz. pairs, or at $5 per doz. pairs plus $1 per doz. pairs under par. 1532 (a) of the Tariff Act of 1930. T. D. 49458 [the Czechoslovakian Trade Agreement].

The testimony of two witnesses for the importer and two witnesses for the Government was introduced. That of the importer was, for the most part, intended to show that a glove partly sewn by machine was not sold and dealt in by the trade as a "hand-seamed" or "hand-sewn" glove.

It was also shown by the testimony of one witness who had dealt in the character of merchandise here involved that a glove partly sewn by hand was sold and dealt in by the trade as a "novelty" glove and not as a "hand-sewn" glove. The stitching on the gloves other than that which was by hand was characterized by the witnesses on both sides as "piqué" stitching. "Piqué," according to one of the importer's witnesses, "is a term used to show one piece of leather is put onto the other, and then sewn"; and the witness further stated that "piqué is the type of stitch."

It was stipulated by the parties that the imported merchandise was not "overseamed."

The trial court held that the record showed that a glove which was partly hand-sewn and partly machine-sewn first appeared on the markets of this country in 1932, after the passage of the Tariff Act of 1930 but prior to the negotiation of the trade agreements here involved. It also held that the terms "seamed by hand" and "machine seamed" were "mutually exclusive"; that according to the testimony, a glove which was seamed by hand was a glove which had been hand-sewn; and, in effect, that since these gloves had been substantially machine-sewn or piqué-sewn, they could not be hand-sewn gloves. It accordingly sustained the protest of appellee and directed the collector to liquidate the entries accordingly.

The Government, in its appeal here, challenges the correctness of the court's holding that "'seamed by hand' coincided in meaning with the term 'hand-sewn.'" The Government argues, therefore, that the testimony of the witnesses relating to the term "hand-sewn" is not

pertinent, and that under the common meaning of the term "seamed by hand" both exhibits have been hand-seamed as above described and are therefore gloves "seamed by hand."

As we understand it, there was no attempt here to show a commercial meaning of the terms "seamed by hand" or "hand-seamed" differing from the common meaning of the terms. In the trial in the court below, the question was asked of appellee's counsel:

Presiding Judge OLIVER. There is no question of commercial designation here, is there?

Miss REHAN. None whatever. It is the common term.

As far as the testimony relating to the meaning, in the trade, of the term "hand-sewn" (which we interpret to be of the same meaning as "seamed by hand") as applied to the instant case, is concerned, it coincides with our understanding of the common meaning of the term "seamed by hand" as used in paragraph 1532 (a) of the tariff act and subsequently used in the French Trade Agreement. That is to say, a glove cannot be a hand-seamed glove and a substantially machine-seamed glove at the same time. It therefore would be necessary, for a glove to respond to the term "seamed by hand," that all the seaming which is essential *to first make it a glove* be done by hand. Neither of the exhibits responds to this requirement. Neither exhibit 1 nor exhibit 2 consists of gloves which have been completed, as gloves, entirely by hand.

This, as we understand it, is the substance of the trial court's holding, but that court did not pass upon the question as to what the term "machine seamed" found in the Czechoslovakian Trade Agreement meant. This term is not in the French Trade Agreement, although it is in paragraph 1532 (a) of the tariff act. If a hand-seamed glove is made into a glove by hand-seaming, it would seem to follow that the same principle would apply to a machine-seamed glove; that is by machine-seaming it must have been first made into a glove. Exhibit 1 was not completed into a glove by a machine and later hand-seamed for ornamental purposes. It, therefore, is not a machine-seamed glove, and it no doubt properly responds to the term referred to in the testimony as a "novelty" glove.

Exhibit 2, however, as we view it, is a machine-seamed glove because by machine-stitching it was first made into a completed glove, and the hand-stitching on one side and across the top was a superimposed embellishment. It follows that appellant's protest as to those gloves represented by exhibit 2 should have been sustained, as it was in the decision of the tribunal below, but the protest should not have been sustained as to those gloves represented by exhibit 1.

From the foregoing it is to be observed that, there being no provision in the Czechoslovakian Trade Agreement for any kind of gloves except those which are machine-seamed, the applicable rate there provided

does not apply, and should not have been applied, to the merchandise represented by exhibit 1. Since the French Trade Agreement covered only such gloves as were seamed by hand, it follows that the dutiable classification of gloves such as those represented by exhibit 1 must be relegated to the provisions of the Tariff Act as unmodified, where the applicable rate would be $5.50 per dozen pairs.

In the instant case, however, paragraph 1532 (a) of said act was not claimed to be applicable to the instant merchandise, nor was the rate of duty provided therein for the instant merchandise mentioned in the protest. The sole claim in the protests, as far as the issue here is concerned, is confined to the applicability of the provisions of the Czechoslovakian Trade Agreement. It follows, therefore, that appellee's protest relating to the merchandise represented by exhibit 1 (gloves neither machine-seamed nor seamed by hand) should have been overruled.

It is our duty under the circumstances to *affirm* the judgment of the trial court as to the goods represented by exhibit 2 and *reverse* its judgment as to the goods represented by exhibit 1. In reversing the judgment of the trial court in the manner stated, we do so without approving the classification of the collector.

The judgment appealed from is therefore *modified* in the respects indicated.