423 P.2d 897

**Betty Marie SAHLIN, a widow, Appellant,**

v.

**AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA,**
a corporation, Appellee.

**No. ( CA–CIV 3(9.**

Court of Appeals of Arizona.

Feb. 17, 1967.

Rehearing Denied March 16, 1967.

Review Granted April 4, 1967.

Langerman, Begam & Lewis, by Frank Lewis, Phoenix, for appellant.

Lewis, Roca, Scoville, Beauchamp & Linton, by Walter Cheifetz and James Moeller, Phoenix, for appellee.

CAMERON, Chief Judge.

This is an appeal by the plaintiff, a widow, from a summary judgment of the trial court finding that an insurance policy which covered her husband for accidental death had lapsed for non-payment of premiums.

We are called upon to determine:

1. Whether the appeal is properly before this Court.

2. Was the policy of insurance issued by the defendant in force and effect at the time of the accident?

The facts necessary for a determination of this matter on appeal are as follows. Kenneth W. Sahlin, the deceased husband of the plaintiff, was an employee of the United States Forest Service. Prior to his death in an airplane accident deceased had received an advertisement concerning an insurance policy limited to Forest Service employees only. The front and back sides of said advertisement are reproduced here.

EXHIBIT A-1

The vast operations of the Forest Service require the use of practically every form of conveyance—from horses in the mountains to speedy buses in the cities. Because of the variety of conveyances used it was necessary to develop a unique Travel Accident Insurance Plan that would suit the needs of every Full and Part Time Forest Service Employee.

Whether your duties are confined to the office, the field or cover the wide range of Forest Service activities you can be sure that your FSE Travel Plan will provide liberal benefits wherever you are. In addition, coverage is provided while you are OFF duty as well, including driving your own car.

When you combine broad coverage with the low cost of your FSE Travel Plan you have one of the most flexible insurance programs available. And don't forget, coverage for the more hazardous duties included in your FSE Travel Plan would not be available to you through any other source—at any price!

Read the description of this Plan's liberal benefits carefully. Then complete the brief application, enclose your check or money order for the low premium, seal and return to your supervisor. In a short time your certificate of coverage will be mailed to you. (In the event that your supervisor is not handy, drop the envelope in the nearest mailbox, no postage is required.)

Postage Will be Paid by Addressee

No Postage Stamp Necessary If Mailed in the United States

BUSINESS REPLY MAIL
First Class Permit No. 19227, Philadelphia, Pa.

FSE TRAVEL PLAN
The BROWNE AGENCY
123 South Broad Street
Philadelphia 9, Pa.

ROOM 1012

designed exclusively for
EVERY FULL & PART-TIME EMPLOYEE
of the
FOREST SERVICE.

UP TO $10,000
ACCIDENTAL DEATH & DISMEMBERMEN BENEFIT

$12 ONLY A YEAR

EXHIBIT A-2

**PAYS $10,000. Principal Sum†**

When loss is sustained while you are a passenger in any conveyance or driving a private passenger automobile.

**YOUR APPLICATION — DO IT NOW!**

**EASY STEPS**

1. Complete the brief application.
2. Enclose your check or money order for $12.00, Payable to FSE Travel Plan, (No cash please).
3. Seal and return to supervisor or if not convenient, drop in nearest mailbox. No postage required.

**PAYS $5,000. Principal Sum†**

When loss is sustained while you are acting as a member of the crew* of any aircraft or operating any type of power earth moving equipment or truck (when used for a purpose other than carrying passengers).

*Crew members include such assignment as, seeders, sprayers, cargo droppers, hopper tenders, and any other duties to accomplish a forestry or rescue job. Members serving on reconnaissance, surveys, and photography work are considered as passenger.

**GROUP ACCIDENT INSURANCE APPLICATION**
AMERICAN CASUALTY COMPANY OF READING, PENNSYLVANIA

| Name of Group Forest Service Employees Travel Plan | Policy Number AA16565 | |
| --- | --- | --- |
| Applicant's Name | Sex | Date of Birth |
| Address City State | | Age |
| Occupation | | |

**BENEFIT**

Accidental Death & Dismemberment

| TOTAL ANNUAL PREMIUM | $12.00 |
| --- | --- |

Beneficiary ___ Given First Name if Married Woman (Use Reverse Side if Necessary) ___ Relationship

Date ___ Signature ___ Applicant

Form 1-43-199018

**PAYS $2,500. Principal Sum.**

When loss is sustained while you a flying as a qualified pilot or co-pil in any aircraft.

†Pays the PRINCIPAL SUM for Accidental Loss of Life or Doub Dismemberment (Hands, Feet or Eyesight). Pays ONE-HALF if PRINCIPAL SUM for Loss of One Hand, One Foot or the Sight One Eye. Loss must occur within 180 days after the accide and in the event of more than one loss, only one, the greates will be paid.

Your FSE Travel Plan covers injury sustained while your co erage is in force and does not cover any loss caused by or re sulting from suicide, intentionally self-inflicted injury; infe tions, except pyogenic infections caused wholly by injury; we military service; flying in rocket propelled or experimental cr craft or in any aircraft used for crop dusting, pipe or pow line inspection, hunting, banner towing, acrobatics, stunt fly ing or endurance tests; smoke jumpers when leaving an air craft for fire fighting or any other Forest Service duty.

Your FSE Travel Plan will not be terminated so long as the Plar remains in force, you are an employee of the Forest Servic are under age 65 and pay premiums when due. Coverage for temporary or part time employees will terminate on the first renewal date following termination of employment.

Mr. Sahlin sent in the amount requested, $12.00, and received a Certificate of Insurance from American Casualty Company of Reading, Pennsylvania, Number 01558, reading in part as follows:

"Certificate of Insurance

Policyholder: Director, Division of Personnel,
Trustee for Forest Service Employees
Travel Plan

Master Policy Number: AA16565 Effective Date:
Insured Person June 15, 1961

Kenneth W. Sahlin Beneficiary:
P. O. Box 153 Betty Marie Sahlin, Wife
Springerville, Arizona

(stamped)
The Browne Agency
Fidelity-Phila. Trust Bldg.
Phil. 9, Pa. PE 5-7382"

The certificate went on to state:

"This certifies that the person to whom this Certificate is issued (herein called the Insured Person) is insured under and subject to all of the terms of the Master Policy from and after the effective date which is written in above."

The certificate also contained the following provisions:

"Coverage with respect to any Insured Person shall immediately terminate:

(1). on the termination date of the Policy or

(2). at the time such person ceases to come within any classification established in Item A of the Schedule of Insurance in the Policy or

(3). on the first renewal date following the date the Insured Person ceases to be an employee of the United States Forest Service or

(4). upon non-payment of the renewal premium * * *"

On 25 June 1962, less than one year from 2 August 1961, the date upon which he applied for his insurance (and mailed his premium of $12.00), but 10 days after his policy allegedly lapsed for non-payment of premiums, Kenneth Sahlin was killed in an airplane accident while on duty with the Forest Service. There is no question concerning the coverage if the policy was in force at the time of death. After Kenneth Sahlin's death, the following was found among his papers.

IMPORTANT INFORMATION!

about your

EXHIBIT B

TRAVEL PLAN

BENEFITS INCREASED $2,000!

NOW PAYS UP TO $12,000 PRINCIPAL SUM

STILL ONLY $12 A YEAR

June 15, 1962 to June 15, 1963

PLUS-

NOW YOU CAN DOUBLE YOUR PROTECTION $24,000 PRINCIPAL SUM

FOR ONLY $24.00 A YEAR!

**KEEP THIS NOTICE WITH YOUR FSE TRAVEL PLAN CERTIFICATE!**
This notice of increased benefits and your cancelled check or money order receipt (for $12 or $24) is your evidence of renewal for one year commencing June 15, 1962, of your FSE Travel Plan.

DETACH AND RETURN WITH YOUR REMITTANCE

FSE TRAVEL PLAN RENEWAL NOTICE

The coverage provided by your FSE Travel Plan expires on June 15, 1962. In order that you may continue uninterrupted coverage it is necessary that this notice and your premium are received in the office of the Administrator prior to the expiration date.

01558

KENNETH W. SAHLIN
P.O. BOX 153
SPRINGERVILLE, ARIZONA

Please check the amount of insurance you desire:
Annual Premium
☐ ONE UNIT . . . . $12.00
☐ TWO UNITS . . . $24.00
If your mailing address is different than the address shown on this notice please show the change below.

X

Your Signature

Plaintiff, his widow, brought suit upon said policy and after a deposition, interrogatories and stipulations, motions for summary judgment were made by both parties. The court denied plaintiff's motion and granted defendant's motion for summary judgment. The following is the sequence of events concerning the appeal to this Court:

| | |
|---|---|
| 10 May 1965 | Minute entry order granting defendant's motion for summary judgment. |
| 1 June 1965 | Plaintiff's "Motion to Set Aside Judgment and Motion to Vacate Judgment and Motion to Alter Judgment" filed. |
| 2 June 1965 | Signed formal written judgment in favor of defendant filed. |
| 10 June 1965 | Plaintiff's "Motion to Set Aside Judgment and Motion to Vacate Judgment and Motion to Alter Judgment" taken under advisement. |
| 2 Sept. 1965 | Minute entry order denying plaintiff's "Motion to Set Aside Judgment and Motion to Vacate Judgment and Motion to Alter Judgment." |
| 19 October 1965 | Notice of appeal filed. |
| 20 October 1965 | Bond on appeal filed. |

## IS THE APPEAL PROPERLY BEFORE THIS COURT?

■ We are first called upon to determine whether the appeal is properly before this Court. Although not questioned by counsel, it is well established that this Court can undertake to examine into its jurisdiction even in the absence of the issue being raised by the parties. Howard P. Foley Co. v. Harris, 4 Ariz.App. 294, 419 P.2d 735 (1966).

In the instant case the formal written judgment in favor of the defendant was filed on 2 June 1965, the notice of appeal was filed 19 October 1965, and the bond was filed on 20 October 1965, which is more than the 60 days within which an appeal may be taken from "entry of the judgment or order appealed from." Rule 73(b) (1), Rules of Civil Procedure, 16 A.R.S. Unless the time within which to appeal has been extended, the notice of appeal from the judgment was not timely made.

■ We must then ask whether the "Motion to Set Aside Judgment and Motion to Vacate Judgment and Motion to Alter Judgment" acts to extend the time within which a party may take an appeal from the judgment.

Rule 73(b) (2) states as follows:

"The time for appeal is extended by a timely motion made pursuant to any of the Rules hereinafter enumerated, and the full time for appeal fixed in this subsection commences to run and is to be computed from the entry of any of the following orders made upon a timely motion under such Rules: * * *

"(ii) Granting or denying a motion under Rule 52(b) to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted.

"(iii) Granting or denying a motion under Rule 59(l) to alter or amend the judgment."

The "Motion to Set Aside Judgment and Motion to Vacate Judgment and Motion to

Alter Judgment" came within the scope of Rules 52(b) and 59(l) of the Rules of Civil Procedure, 16 A.R.S., and thereby the time for appeal from the judgment was extended by the making of these motions.

We must next determine whether the order denying the motions to set aside, vacate and alter the judgment are appealable orders within the meaning of 12–2101 A.R.S. Although our Supreme Court has stated that an order granting a motion setting aside a default judgment is an appealable order (Bateman v. McDonald, 94 Ariz. 327, 385 P.2d 208 [1963]), which presumably must be reduced to written form before it can be effective and an appeal taken therefrom (State v. Birmingham, 96 Ariz. 109, 392 P. 2d 775 [1964]), our Supreme Court has also ruled that an order denying a motion to set aside default was not a "final judgment" and therefore "not appealable". Rueda v. Galvez, 94 Ariz. 131, 382 P.2d 239 (1963).

Although the Rueda v. Galvez case, supra, and Bateman v. McDonald case, supra, can well be distinguished on the basis that in Rueda v. Galvez, supra, a final judgment on the merits has not been entered, we think that the two cases can aid in the situation as here where there has been a judgment on the merits and motions to set aside, vacate and alter are made. Under these circumstances, the order denying same is not an appealable order and therefore does not have to be reduced to writing to be effective for purposes of appeal. The judgment filed on 2 June 1965 did not become a final judgment until the ruling on the motion to set aside, vacate and alter. Therefore the order on this motion was not a " * * special order made after final judgment" within the provision of A.R.S. Sec. 12–2101, subsec. C.

 We feel and therefore hold that an order denying a timely motion to vacate, alter or amend a previously entered judgment is not appealable, and therefore effective when entered in the minutes. The motion having the effect of extending the time for appeal pursuant to Rule 52(b) and 59(l) the time within which to appeal starts to run when the minute entry order is made denying the motion. On appeal he may assign as error both the sufficiency of the judgment and the denial of the motion. Gabriel v. Murphy, 4 Ariz.App. 440, 421 P. 2d 336 (1966).

This fact situation can be distinguished from Zoellner v. Zoellner, 4 Ariz.App. 561, 422 P.2d 392, filed 18 January 1967, wherein we were dealing with an order denying a motion for new trial which had not been reduced to written form and is clearly within the State v. Birmingham, supra, rule requiring that it be so reduced before it is effective as a "final judgment".

We hold in the instant case the appeal is properly before this Court.

## WAS THE POLICY IN FORCE AND EFFECT AT THE TIME OF DEATH?

 The plaintiff-appellant contends that the defendant-insurance company is estopped from denying that there is coverage in the instant case. Appellant points to the pamphlet and to the policy of insurance itself and alleges as a fact that the deceased relied upon the pamphlet in believing that he had coverage for one year from the date he sent his check to the company. It has been stated that the three elements of equitable estoppel or estoppel in pais are:

1. Affirmative acts inconsistent with the claim afterward relied upon.

2. Action by a party relying on such conduct, and

3. Injury to the party resulting from a repudiation of such conduct.
 Decker v. Hendricks, 97 Ariz. 36, 396 P.2d 609 (1964), Cashion Gin v. Kulikov, 1 Ariz.App. 90, 399 P.2d 711 (1965).

It has also been stated that the "innocence" which supports the plea of estoppel is the ignorance of such facts as would lead an ordinary prudent man using ordinary caution to make further inquiries. O'Malley v. United Producers & Consumer's Co-op.,

**134**

Inc., 95 Ariz. 134, 387 P.2d 1016 (1963). The brochure previously reproduced herein (Exhibits A–1 and A–2) stated that the insured will receive up to $10,000.00 for only $12.00 per year. Nowhere in the brochure does it indicate that for the amount of $12.-00 he was receiving coverage of less than one year. The Certificate of Insurance itself, Number 01558, does state an effective date but nowhere does it indicate that the policy is in force and effect for less than a one year period from date of receiving the premium. Exhibit B (Exhibit D in the court below), reproduced above, does state under the large print of "ONLY $12.00 PER YEAR" the dates June 15, 1962 to June 15, 1963, but nowhere does it indicate that in signing up after 15 June the insured receives less than one year's coverage. Neither is there any evidence to indicate a return of premium for the period between 12 June 1962 and the date of the check of 2 August 1962.

■ The defendant points out that there was a rider which was attached to the master policy which reads in part as follows:

"In consideration of the payment of the individual annual premiums for the Policy and Certificates to which this Rider is attached, it is hereby understood and agreed that the aforesaid Policy is renewed for another twelve (12) consecutive months and the following provisions are made a part of the contract. * * *

"2. The cancellation provision is changed to read that the Company agrees not to cancel unless written notice is given to the Policyholder at least 31 days prior to renewal date."

There is nothing to indicate that the deceased knew of or ever read this rider which was not a part of the Certificate of Insurance he received from the defendant. We believe that the brochure could induce an ordinary prudent man to believe that when he sent in his premium he was receiving one year of coverage by the defendant-company. The deposition of the plaintiff is more than ample to raise a fact question that the deceased relied upon the prior representations or misrepresentations of the defendant-company, and that therefore the defendant-company is estopped to deny their coverage. This conclusion is based upon the representations made to the deceased by the company's brochure and the deceased's state of mind. It has been stated:

"The rule of construction in favor of the insured is applicable to applications for insurance as well as to insurance policies themselves. An application for insurance prepared by the insurer, or a question in an application for insurance which is propounded and formulated by the insurer, where it is ambiguous, will be construed most strongly against it and in favor of the insured." 29 Am.Jur. 647, Insurance, Sec. 262.

The rider which could have made it clear to deceased that even though he paid one year's premium for his insurance it was the intent of the company that he should only be insured for a portion of the year since he purchased his insurance after the 15th of June, was filed and made part of the master insurance policy and was never brought to decedent's attention. It was not a part of his Certificate of Insurance and he was not aware of its provisions.

■ As to deceased's state of mind (did he in fact rely on the misleading brochure and advertisement?), our Court has stated:

"While we agree that the summary judgment procedure should be sparingly used when a vital issue concerns a state of mind, we do not believe that the granting of a summary judgment is never authorized when state of mind is an issue.

"The line of federal cases cited by the appellant is distinguishable. In each of the cases cited, to the extent that the case was concerned with the factual issue of a state of mind, the state of mind at issue pertained to a party to the suit. In each, there was some semblance of circumstantial evidence that this party's

claim or disclaimer of the state of mind in question was untrue. The reasoning of these cases is that under these circumstances the matter should not go off on summary judgment, but a jury, or the trier of fact, should be given the opportunity to judge the credibility of the testimony of such a party by direct confrontation at the time of trial." Reidy v. Almich, 4 Ariz.App. 144, 418 P.2d 390 (1966).

For the reasons stated, the matter is reversed and remanded to the court below for trial or further proceedings not inconsistent with this opinion.

DONOFRIO and STEVENS, JJ., concur.