273 A.2d 318.

BARBARA JANET GOLDSTEIN *vs.* OCCIDENTAL LIFE INSURANCE COMPANY OF CALIFORNIA.

FEBRUARY 5, 1971.

PRESENT: Roberts, C. J., Paolino, Joslin and Kelleher, JJ.

PAOLINO, J. This is a civil action in which the plaintiff brought suit under a medical insurance policy seeking recovery of medical expenses. The case is before us on the plaintiff's appeal from an entry of judgment against her in the Superior Court.

In December 1965, after preliminary negotiations between the plaintiff's father and an agent of defendant insurance company, Barbara Janet Goldstein received an application for a major medical insurance policy with defendant company. At the time, plaintiff was residing and working in New York City.

The plaintiff completed this application and returned it to the agent for the insurance company. The December application was received by the home office of Occidental, approved, and shortly thereafter, the defendant issued a major medical policy to plaintiff dated January 6, 1966. Before delivery of the policy to plaintiff, however, defendant determined that the December 23, 1965, application form submitted by plaintiff was obsolete. Therefore, defendant prepared a new application form for plaintiff's signature. The defendant, relying on information contained in the out-dated December form, and on an application for life insurance which plaintiff had submitted to the company some time previously, supplied answers to pertinent questions on the new form. The new application as completed was dated January 10, 1966, and was attached to the policy. The policy and application were sent to defendant's agent for delivery to plaintiff subject

to the condition that Miss Goldstein sign the January application prior to delivery.

In January of 1966, after plaintiff signed the application and paid the first annual premium, the agent delivered the policy to plaintiff's father in Providence. Attached to the policy was the January 10, 1966 application, which by the policy's terms became an integral part of the policy itself. The December 1965 application was not attached to the policy. It was not mentioned on the policy nor on the new application.

Both applications contained questions referring to insurance presently in force. In the December 23 application, questions referred to pending applications for "accident, sickness, or life insurance," and present "hospital, medical or surgical expense insurance." The January 10 application contained two questions pertaining to "accident and sickness insurance," and "accident or sickness coverage."

The January 10, 1966 application, as completed by defendant company, and signed by plaintiff, included negative responses to both questions referring to present insurance coverage.[1] However, on December 30, 1965, between the dates of the first and second application, plaintiff did become covered under a group insurance policy for major medical expenses issued to her through her employer in New York City, and underwritten by the Prudential Insurance Company of America. Miss Goldstein did not at any time report this coverage to defendant.

---

[1]Under Part 1 of the application there appears the question: "11. Accident and Sickness Insurance now in force." Under this heading, there are blanks for amounts of cancellable and noncancellable monthly indemnity, benefit period, and principal sum. The remaining question in issue is found on the following page, section B. Question 4(a) reads: "Does any person to be covered now have any type of accident or sickness coverage in force?" Neither question includes the term "major medical insurance."

In June 1966, plaintiff became ill and needed hospital care. Subsequent thereto, claim was made under the policy in question and refused by defendant. This refusal was based on what defendant considered to be false answers on the applications signed by plaintiff, in response to those questions asking if plaintiff had other insurance coverage.

The case was heard before a justice of the Superior Court sitting without a jury. In finding for defendant the trial justice found that the December 23, 1965 application was the basis for the issuance of the policy, and that the application of January 10, 1966 was issued merely to conform the proceedings to the later regulations of the insurance company. The trial justice also found that under either application the coverage afforded plaintiff by virtue of her employment came within the scope of the appropriate questions, and that plaintiff had an obligation to indicate in her applications that she had such coverage. Absent this information, the trial justice concluded that defendant had a legal right to decline the claim and return the premium.

For the reasons which follow, we hold that the trial justice erred in so finding.

The initial issue which we consider is whether the December 23, 1965, or the January 10, 1966 application is controlling.

Under G. L. 1956 (1968 Reenactment) §27-18-14 it is provided that

> "The insured shall not be bound by any statement made in an application for a policy unless a copy of such application is attached to or endorsed on the policy when issued as a part thereof."

Only the January 10 application was attached to the policy.

Further, both counsel at oral argument before us con-

ceded that the January 10, 1966 application is controlling. Therefore, representations made on the December 23 application are irrelevant to a suit on the policy, and any defense asserted by Occidental must be based on the January 10 application.

As we have previously stated, the January application contained two questions with reference to present accident and sickness insurance coverage. Since the trial justice concluded that plaintiff's negative responses to these questions justified defendant's refusal to honor plaintiff's claim, the issue is narrowed to whether these questions contemplate major medical insurance of the type held by plaintiff when she signed the January application.

The consideration of the meaning of language employed in an insurance contract is always engaged in with basic tenets in mind. While the language used in a policy is given its plain, ordinary and usual meaning, *Aldcroft* v. *Fidelity and Casualty Co.*, 106 R. I. 311, 259 A.2d 408, if doubtful, uncertain or ambiguous terms are used, or those which are reasonably susceptible of two interpretations, the construction conferring coverage is to be adopted. *Nagy* v. *Lumbermens Mutual Casualty Co.*, 100 R. I. 734, 219 A.2d 396; *Madsen* v. *Metropolitan Life Ins. Co.*, 90 R. I. 176, 156 A.2d 203; *Sherman* v. *New York Casualty Co.*, 78 R. I. 393, 82 A.2d 839; *Knowles* v. *Lumbermens Mutual Casualty Co.*, 69 R. I. 309, 33 A.2d 185. The fact that the terms in question here came from the application as distinguished from the policy itself is of no effect, since the policy incorporated the application attached to it. See also *Sahlin* v. *American Casualty Co.*, 5 Ariz. App. 126 at 134, 423 P.2d 897 at 905, citing 29 Am. Jur. 647, *Insurance* §262:

" 'The rule of construction in favor of the insured is applicable to applications for insurance as well as to insurance policies themselves. An application for in-

surance prepared by the insurer, or a question in an application for insurance which is propounded and formulated by the insurer, where it is ambiguous, will be construed most strongly against it and in favor of the insured.' "

Both questions on the application refer to accident and sickness insurance. The major medical policy under which Miss Goldstein was protected included reimbursement for most medical and hospital expénses incurred by her. However, the plaintiff argues that the questions do not include a major medical policy coverage.

We agree with plaintiff and find that because of ambiguity in the questions as posed on the application, it was reasonable for her to believe that the major medical policy provided by her employer was not a type of accident and sickness insurance.

The test to be applied by a court in determining the meaning of ambiguous terms in an insurance contract is not what the insurer intended by its words, but what the ordinary reader and purchaser applying for insurance would have understood them to mean. *Joslin* v. *Aetna Life Insurance Co.*, 67 R. I. 261, 21 A.2d 550. Under these facts, once an ambiguity is present, the burden was on defendant to establish (1) that it would be unreasonable for the average man reading the application to believe that major medical was not included, and (2) that its construction was the only one that could fairly be placed on the policy. We conclude that defendant has failed to meet this burden. See *Sincoff* v. *Liberty Mutual Fire Insurance Co.*, 11 N.Y.2d 386, 183 N.E.2d 899. Sickness and accident insurance has been judicially distinguished from other forms of medical coverage in *Shapira* v. *United Medical Service, Inc.*, 257 N.Y.S.2d 150 at 164, 205 N.E.2d 293 at 303-04.

"Sickness and accident (i.e., accident and health) insurance, therefore, is a type of insurance distinct

from nonprofit 'medical expense indemnity.' * * * A medical expenses indemnity contract is an 'indemnity' contract, i.e., one which insured the subscriber against *actual* expense. On the other hand, a health and accident policy is not an indemnity contract and benefits may be due thereunder even though no actual *loss* had been incurred. Thus under a sickness and accident policy the benefit (and the premium) may be based upon the occurrence of an event (accident or illness) rather than the occurrence of an expense or loss."

Further, at the trial, one of defendant's witnesses, an underwriter for Occidental, admitted that the accident and sickness insurance in question 11 referred to disability payments and not to major medical insurance.

Additional evidence of ambiguity is found in the fact that defendant itself, in another portion of the application,[2] refers to three distinct types of insurance: life, accident and sickness, and medical service. Evidently the defendant also feels that there may be a distinction between accident and sickness and medical service coverage.

Question 4(a), while it may lack the additional confusing and patently ambiguous terms of "indemnity, benefit period and principal sum" included in the prior question, nevertheless is still ambiguous. Since the sole reference in that question is to the term "accident or sickness," we find it reasonable for plaintiff to believe that the insurance referred to in this latter question was limited to the "monthly indemnity" type included in part 1, number 11. See *Mutual Life Insurance Co.* v. *Ford,* 61 Tex. Civ. App. 412, 420, 130 S.W. 769, 773.

Since the form and content of the questions are vague and ambiguous, we find that it was reasonable for plain-

---

[2]Question 3 under Section C — "Family Coverage" — This section of the application was not required to be completed by plaintiff in applying for individual coverage.

tiff to believe that major medical insurance was not intended. Such statements should not require interpretation. Their language should be so direct and simple as to be easily understood. See *Joslin* v. *Aetna Life Insurance Co., supra.* As the Supreme Court of Maine said in *Wright* v. *Fraternities Health & Accident Ass'n,* 107 Me. 418, 421, 78 A. 475, 477:

> " * * * it is incumbent upon the company which prepares the form of application, containing declarations to be made and questions to be answered, to use language so plain and intelligible that the ordinary person, under the usual circumstances of filling out applications, can readily comprehend it."

The remainder of defendant's arguments are also without merit.

The defendant argues that question 4(a) is not ambiguous, since the second portion of this question lists many types of insurance coverage, including major medical. The weakness in defendant's position is found in the fact that the latter inquiry was to be completed only if 4(a) were answered in the affirmative. Since we find that plaintiff was justified in answering "No" in part (a), there was no requirement that petitioner peruse the question any further.

The defendant also argues that under §27-18-1 (1968 Reenactment),[3] the term accident and sickness should include major medical insurance. A closer reading of the statute, however, shows that the Legislature did not intend thereby to provide a definition of "accident and sickness" to be applicable to all contracts of insurance executed in this state. Rather this statutory definition is

---

[3]Section 27-18-1 reads:
"Policies subject to chapter.—The term 'policy of accident and sickness insurance' as used herein includes any policy or contract covering against 'loss resulting from sickness or from bodily injury or death by accident, or both."

limited to its applicability "as used herein," that is, as used in the context of chap. 18 of title 27 of the section, and is, therefore, irrelevant to our consideration of what the parties intended in the insurance application.[4]

We, therefore, hold that the questions as posed in the application of January 10, 1966, were of such an ambiguous nature as to cause the plaintiff to reasonably believe that the major medical policy insuring her through her place of employment was not contemplated within the scope of the questions. In the circumstances, the omission of the major medical coverage in the application does not render the contract void. Since the insurer is the one responsible for the ambiguity, it shall suffer the consequences.

As this court said in *Nagy* v. *Lumbermens Mutual Casualty Co., supra,* at 740, 219 A.2d at 400:

> "In these circumstances our rule of construction requires that we charge the fault to the insurer who selected the language and that we accept the interpretation which favors the beneficiaries."

Since the issues heretofore considered are dispositive of the case, we do not consider the remaining arguments of plaintiff.

The plaintiff's appeal is sustained, the judgment appealed from is reversed, and the cause is remanded to the Superior Court with directions to enter judgment in accordance with this opinion.

Powers, J., did not participate.

---

[4]See *annot.* 119 A.L.R. 768:

"However, the better view would seem to be that statutes of this kind are neither binding on the courts nor entitled to great weight as authority; since the real issue is, not the proper construction of the statutes regulating insurance companies, but rather what the parties had in mind when they entered into the insurance contract."

Motion for leave to reargue denied.

*Abedon, Michaelson, Stanzler and Biener, Howard I. Lipsey,* for plaintiff.

*Jordan, Hanson & Curran, A. Lauriston Parks, for* defendant.